88 F.3d 697
 26 Envtl. L. Rep. 21,149, 96 Cal. Daily Op.
Serv. 3259,
96 Cal. Daily Op. Serv. 5217,
96 Daily Journal D.A.R. 5344
 INLAND EMPIRE PUBLIC LANDS COUNCIL; The Ecology Center;
Alliance for the Wild Rockies, Inc., Plaintiffs-Appellants,
v.
Dan GLICKMAN, Secretary of the United States Department of
Agriculture; United States Forest Service;
United States Fish and Wildlife Service,
Defendants-Appellees,
and
Intermountain Forest Industry Association,
Defendant-Intervenor-Appellee.
 No. 95-36272.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 13, 1996.
Decided May 8, 1996.
Order Amending Opinion July 15, 1996.
 
 James S. Angell, Sierra Club Legal Defense Fund, Bozeman, Montana; Patti A. Goldman, Sierra Club Legal Defense Fund, Seattle, Washington, for plaintiffs-appellants.
 Alberto M. Ferlo, Jr. and Sandra B. Zellmer, United States Department of Justice, Environment and Natural Resources Division, Washington, DC, for defendants-appellees.
 Bruce M. Smith, Rosholt, Robertson & Tucker, Boise, Idaho, for defendant-intervenor-appellee.
 Appeal from the United States District Court for the District of Montana, Charles C. Lovell, District Judge, Presiding. D.C. No. CV-95-00133-CCL.
 Before: CHOY, BEEZER, and HAWKINS, Circuit Judges.
 
 ORDER
 
 1
 The motion which was filed on June 20, 1996 by Appellants Inland Empire Public Lands Council, The Ecology Center and Alliance for The Wild Rockies, for leave to file a responsive letter brief herin is GRANTED.
 
 
 2
 Having considered that motion of Appellants and the objections to that motion filed herein by Defendant-Intervenor-Appellee Intermountain Forest Industry Association on June 21, 1996, and by Defendant-Appellees Dan Glickman, et al., on July 3, 1996, the court makes the following amendments to its opinion in this appeal:
 
 OPINION
 CHOY, Circuit Judge:
 
 3
 Inland Empire Public Lands Council, The Ecology Center and Alliance for The Wild Rockies (collectively "Inland Empire") appeal the summary judgment in favor of Secretary of Agriculture Dan Glickman, the United States Forest Service and the United States Fish and Wildlife Service ("FWS") (collectively "the Secretary"). We affirm.
 
 
 4
 I. Factual and Procedural Background.
 
 
 5
 In August 1994, a lightning storm ignited over 200 fires in the Kootenai National Forest in northwest Montana, burning 55,000 acres. The Forest Service aims to conduct salvage timber sales of roughly 36 million board feet in the North and South Fork areas of the Kootenai National Forest, under § 2001(a)(3) of the Emergency Supplemental Appropriations for Additional Disaster Assistance, for Antiterrorism Initiatives, for Assistance in the Recovery from the Tragedy that Occurred at Oklahoma City, and Rescissions Act, 1995, Pub.L. No. 104-19, 1995 U.S.C.C.A.N. (109 Stat.) 240, 241 (to be codified at 16 U.S.C. § 1611).
 
 
 6
 Pursuant to § 2001(c)(1)(A), the Forest Service prepared Biological Assessments ("BAs"), which concluded that the sales were not likely to adversely affect the Cabinet/Yaak Ecosystem grizzly bears, a threatened species under the Endangered Species Act. After a round of discussions between the Forest Service and FWS, FWS concurred that the sales were unlikely to adversely affect the grizzly bears. The Forest Service issued Decision Notices and invitations to bid on the sales in October 1995, and awarded contracts on December 19, 1995.
 
 
 7
 Inland Empire filed this action on November 3, 1995, seeking a permanent injunction prohibiting the Secretary from proceeding with the Kootenai sales. The parties, including Appellee-Defendant-Intervenor Intermountain Forest Industry Association, have complied with an expedited briefing schedule, and submitted the matter on cross-motions for summary judgment. On December 18, 1995, the district court denied Inland Empire's motion for summary judgment and injunctive relief and granted the Secretary's cross-motion for summary judgment, motion to dismiss, and motion to strike extra-record materials. Inland Empire timely appeals.
 
 
 8
 II. Analysis.
 
 
 9
 A. Standard of review.
 
 
 10
 The Rescissions Act provides for extremely limited judicial review. Section 2001(f)(4) provides:The courts shall have authority to enjoin permanently, order modification of, or void an individual salvage timber sale if it is determined by a review of the record that the decision to prepare, advertise, offer, award, or operate such sale was arbitrary and capricious or otherwise not in accordance with applicable law (other than those laws specified in subsection (i)).
 
 
 11
 Subsection (i) exempts salvage timber sales from all federal environmental and natural resource laws. § 2001(i). Review of salvage timber sales is thus limited in that "(1) review is based on the administrative record only; (2) the standard of review is arbitrary and capricious or otherwise not in accordance with applicable law; and (3) the sale is not subject to any federal environmental or natural resources laws." Kentucky Heartwood, Inc. v. United States Forest Serv., 906 F.Supp. 410, 412 (E.D.Ky.1995).
 
 
 12
 We review a grant of summary judgment de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 
 13
 B. The Forest Service's decision to conduct the Kootenai sales was not arbitrary and capricious.
 
 
 14
 An agency's decision is arbitrary and capricious if
 
 
 15
 the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.
 
 
 16
 Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). "This inquiry must 'be searching and careful,' but 'the ultimate standard of review is a narrow one.' " Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971)).
 
 
 17
 Inland Empire argues that the Kootenai sales fail this review because the Forest Service's new "core area" strategy will inadequately protect the grizzly bear population. Inland Empire argues that the core area strategy incorporates several dangerous changes: (1) applying the road density limitation only to each Bear Management Unit, rather than to each smaller Bear Analysis Area; (2) allowing exceptions to the forty-acre opening size and 600-foot movement corridor restrictions; and (3) allowing exceptions to the seventy-percent habitat effectiveness standard.
 
 
 18
 The Forest Service did not need to consider the effect on the grizzly bear. Section 2001(c)(1)(A) provides:
 
 
 19
 A document embodying decisions relating to salvage timber sales proposed under authority of this section shall, at the sole discretion of the Secretary concerned and to the extent the Secretary concerned considers appropriate and feasible, consider the environmental effects of the salvage timber sale and the effect, if any, on threatened or endangered species....
 
 
 20
 (Emphasis added). The Forest Service had discretion to disregard entirely the effect on the grizzly bear.
 
 
 21
 The Forest Service did consider the effect on the grizzly bear, and concluded that the sales are "not likely to adversely affect the grizzly bear or its habitat." BA for North Fork at 19; BA for South Fork at 16. The BAs discussed all the factors which Inland Empire identifies as endangering the grizzly bear-habitat effectiveness, road densities, bear distribution, opening size and movement corridors-and reached a different conclusion. The Forest Service reached this conclusion because the core strategy (1) retained adequate space and distribution of bears; (2) maintained very limited motorized access; (3) rehabilitated thirty-nine miles of roads; and (4) did not interfere with the beneficial effects which fires typically have on grizzly bear forage. BA for North Fork at 19.
 
 
 22
 Similarly, FWS recognized Inland Empire's concerns, but concluded that "the proposed project is not likely to adversely affect the threatened grizzly bear." FWS Concurrence for North Fork at 1; FWS Concurrence for South Fork at 1. In a July 27, 1995 letter to the Forest Service, FWS concluded that the plan is "not likely to jeopardize " grizzly bear survival because (1) the best scientific data is insufficient to allow FWS to quantify the mortality risk; (2) the bear population has increased slightly in recent years; (3) bear reproduction is occurring; and (4) human-caused and overall mortality has decreased over the last twelve years. This conclusion is not "so implausible that [the agency's decision] could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Assn., 463 U.S. at 43, 103 S.Ct. at 2867.
 
 
 23
 Inland Empire argues that the Forest Service fails to rationalize its change in bear protection policy. "Whatever the ground for the departure from prior norms, ... it must be clearly set forth so that the reviewing court may understand the basis of the agency's action...." Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade, 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973). The Forest Service has explained that the 1994 fires triggered the new policy. The fire damage necessitated new priorities for timber salvage and wildlife protection, as Congress recognized in passing the Rescissions Act. To balance these needs, and after extensive consultation with FWS, the Forest Service decided to adopt the core area strategy. BA for South Fork at 12.
 
 
 24
 Inland Empire argues that the core area strategy does not incorporate all of the specific recommendations of the Interagency Grizzly Bear Committee Taskforce Report, upon which the Forest Service relied. Secretary Glickman, however, has sole discretion over the information considered to reach a decision, and sole discretion to determine whether the decision complies with existing applicable forest management plans and guidelines. § 2001(c)(1). Nothing requires Secretary Glickman to adopt all of the specific recommendations of a report upon which he relies.
 
 
 25
 Given the Forest Service's rational explanations for its actions and our limited scope of review, the Forest Service was not arbitrary and capricious in pursuing the Kootenai sales.
 
 
 26
 C. Secretary Glickman need not personally authorize the Kootenai sales.
 
 
 27
 Inland Empire argues that the "sole discretion" language in the Rescissions Act requires that Secretary Glickman personally authorize all salvage timber sales. To support this interpretation, Inland Empire points to the remarks of Senator Lieberman made on the Senate floor: "The timber provision that finally passed contains a change over previous language to expand the role of the Secretary of Agriculture to require his signature in order to implement new sales." 151 Cong. Rec. S10465 (July 21, 1995). The floor statements of an individual member of Congress who did not sponsor the bill, however, have limited value in interpreting congressional intent. Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 118-19, 100 S.Ct. 2051, 2061, 64 L.Ed.2d 766 (1980).
 
 
 28
 "Without express congressional authorization for a subdelegation, we must look to the purpose of the statute to set its parameters." Assiniboine & Sioux Tribes v. Board of Oil & Gas Conservation, 792 F.2d 782, 795 (9th Cir.1986). Requiring Secretary Glickman to personally authorize every salvage timber sale would contradict the purpose of the Rescissions Act, which is to expedite such sales. Moreover, "delegation generally is permitted where it is not inconsistent with the statute." National Ass'n of Psychiatric Treatment Ctrs. for Children v. Mendez, 857 F.Supp. 85, 91 (D.D.C.1994); see generally Loma Linda Univ. v. Schweiker, 705 F.2d 1123, 1128 (9th Cir.1983) (holding that "[e]xpress statutory authority for delegation is not required, and Congress did not specifically prohibit delegation under this statute.") (citation omitted).
 
 
 29
 Inland Empire argues that the phrase "sole discretion" must indicate that Secretary Glickman cannot delegate his discretion In fact, that phrase is subject to two interpretations: that no one can interfere with the Secretary's discretion, or that the Secretary cannot delegate that discretion. Inland Empire cites to no cases which interpret "sole discretion" to prohibit delegation. In the absence of such authority, we will not interpret the Rescissions Act to frustrate the statute's purpose.
 
 
 30
 Secretary Glickman followed the delegation procedures which the Secretary of Agriculture traditionally has used. Secretary Glickman delegated authority to an Assistant Secretary, who delegated authority to the Chief of the Forest Service. 7 C.F.R. § 2.19(b)(2); 7 C.F.R. § 2.60(a)(2). If Congress had intended to alter the Secretary's delegation procedures, it would have explicitly done so. We agree with the United States District Court for the District of Idaho that the Secretary need not personally authorize salvage timber sales. See Idaho Conservation League v. Thomas, 917 F.Supp. 1458 (D.Idaho 1995).
 
 
 31
 United States v. Giordano does not indicate a contrary result. 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). The statute in Giordano expressly described to whom authority could be delegated. Id. at 508, 94 S.Ct. at 1823 (18 U.S.C. § 2516(1) confers power to authorize a wiretap on the "Attorney General, or any Assistant Attorney General specially designated by the Attorney General."). In contrast, the Rescissions Act is silent regarding delegation. Giordano applies only to statutes which explicitly restrict delegation. See, e.g., Untied States v. Burnes, 816 F.2d 1354, 1359 (9th Cir.1987) (holding ______ Giordano inapplicable to statute which did not explicitly restrict delegation); see also Touby v. United States, 500 U.S. 160, 169, 111 S.Ct. 1752, 1758, 114 L.Ed.2d 219 (1991) ("We have interpreted § 501(a) to permit the delegation of any function vested in the Attorney General under the Act unless a specific limitation on that delegation authority appears elsewhere in the statute. See United States v. Giordano ...").
 
 
 32
 D. The district court properly dismissed Inland Empire's claim against FWS.
 
 
 33
 Inland Empire alleges that FWS acted arbitrarily and capriciously in concurring with the Kootenai sales. Inland Empire lacks standing, however, to assert this claim. To establish standing, a plaintiff must show that it is " 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 38, 43, 96 S.Ct. 1917, 1924, 1926-27, 48 L.Ed.2d 450 (1976)). The Forest Service did not need the concurrences of FWS to proceed with the sales; "notwithstanding substantial interagency disagreement, the Forest Service was entitled to rely on the opinions and analysis of its own experts." Idaho Conservation League, 917 F.Supp. at 1464. Inland Empire fails to show that an order setting aside the FWS concurrences would redress its injury in any way.
 
 
 34
 In addition, the claim fails on its merits. As noted above, FWS considered all of Inland Empire's concerns, and rationally explained its conclusions.
 
 
 35
 E. The district court did not abuse its discretion in striking Inland Empire's supporting exhibits and declarations.
 
 
 36
 Inland Empire asserts that the district court improperly struck several extra-record materials: two expert declarations regarding grizzly bear survival; four Forest Service and FWS documents and two papers on grizzly bear management, upon which the Forest Service did not rely; and several FWS documents upon which FWS relied in reaching its concurrences. We review for abuse of discretion a district court's decision to exclude extra-record evidence. Friends of the Payette v. Horseshoe Bend Hydroelectric Co., 988 F.2d 989, 997 (9th Cir.1993) (per curiam).
 
 
 37
 The Rescissions Act limits judicial review to "a review of the record." § 2001(f)(4). This parallels the long-standing rule that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). This circuit has only allowed extra-record materials (1) if necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) "when the agency has relied on documents not in the record," or (3) "when supplementing the record is necessary to explain technical terms or complex subject matter." Friends of the Payette, 988 F.2d at 997. A fourth circumstance occurs "when plaintiffs make a showing of agency bad faith." National Audubon Soc. v. U.S. Forest Serv., 46 F.3d 1437, 1447 n. 9 (9th Cir.1993).
 
 
 38
 The Forest Service considered all the relevant factors. Likewise, the Forest Service did not directly or indirectly consider Inland Empire's materials. The record contains only those materials before the Forest Service at the time of its decision. In addition, Inland Empire's materials are not necessary to explain technical terms or complex subject matter; the documents in the administrative record are not overly technical, nor does Inland Empire explain how its materials are any less complex. Finally, Inland Empire makes no allegation of agency bad faith. The district court did not abuse its discretion in striking Inland Empire's extra-record materials.
 
 
 39
 III. Conclusion.
 
 
 40
 We AFFIRM the denial of Inland Empire's motion for summary judgment and injunctive relief and AFFIRM the grant of the Secretary's cross-motion for summary judgment, motion to dismiss, and motion to strike extra-record materials.