**IDAHO SPORTING CONGRESS, INC., Plaintiff–Appellant,**

v.

**UNITED STATES FOREST SERVICE, Defendant–Appellee,**

and

**Intermountain Forest Industry Association, Intervenor–Appellee.**

No. 96–35150.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 1996.

Decided Aug. 12, 1996.

Thomas J. Woodbury, Idaho Sporting Congress, Inc., Boise, Idaho;  D. Bernard Zaleha, Boise, Idaho, for plaintiff-appellant.

Monica Medina, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, for defendant-appellee.

Bruce M. Smith, Rosholt, Robertson & Tucker, Boise Idaho, for defendant-intervenor-appellee.

Before: LAY,* FERGUSON, and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

The Idaho Sporting Congress ("ISC") appeals from the district court's dismissal of various claims and its grant of summary judgment in favor of the United States Forest Service ("Forest Service") in ISC's action seeking declaratory and injunctive relief with respect to three forest projects and seven associated timber sales. ISC alleged that the Forest Service had violated the Rescissions Act,[1] the Administrative Procedure Act, 5 U.S.C. § 701 et seq., ("APA"), a Presidential directive and an interagency Memorandum of Agreement concerning implementation of the Rescissions Act, and the public trust doctrine.

ISC argues that the district court erred by: 1) dismissing all the claims brought under the APA; 2) concluding that the Forest Service had not violated any Presidential directive; 3) concluding that the Forest Service had not violated the public trust doctrine; and 4) concluding that the Forest Service's decisions with respect to the sales properly challenged under the Rescissions Act were not arbitrary or capricious. We affirm.

## FACTS AND PRIOR PROCEEDINGS

In 1994, a series of unprecedented wildfires burned hundreds of thousands of acres of forestland in Idaho and Montana. The areas involved in this appeal were affected by the Corrall, Blackwell, Chicken, and Thunderbolt wildfires. In response to these unprecedented fires, the Forest Service formed interdisciplinary scientific teams, referred to as Landscape Analysis Teams, to study how the fires had affected the natural resources in the forests, and to make recommendations for remedying ecological damage.

The work done by the teams eventually led to the development of a series of forest project decisions, all issued by the Forest Service in October of 1995. While the goals of each project differed in minor respects, the intended goals of each program included: salvaging of timber, reforestation of salvage areas, and improvement of water quality and fish habitat. The three forest recovery projects relevant to the present appeal are the Lower South Fork Project ("Lower South Fork Project"), the Thunderbolt Wildfire Recovery Project ("Thunderbolt Project"), and the Main Salmon Post–Fire Recovery Project ("Main Salmon Project").

Each forest project included planned salvage timber sales, which would allow harvesting of the burned timber or affected areas and whose revenues would help toward financing other parts of the forest recovery projects. The Lower South Fork Project provided for two sales: the Big Flat and Pony Creek; the Thunderbolt Project provided for one sale: the Thunderbolt; the Main Salmon Project provided for four sales: the Lower Elkhorn, Fall/Carey, Jenkins, and Elkhorn Basin. There is no dispute that all of the salvage timber sales at issue in this appeal fall within the scope of sales covered by the Rescissions Act.

The Idaho Sporting Congress ("ISC") filed this action seeking declaratory and injunctive relief challenging the three projects and the seven timber sales associated with the projects. ISC alleged that the Forest Service had violated the Rescissions Act, the APA, a

---

\* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. *See* the Emergency Supplemental Appropriations for Additional Disaster Assistance, for Anti-

Terrorism Initiatives, for Assistance in the Recovery from the Tragedy that Occurred at Oklahoma City, and Rescissions Act, Pub.L. No. 104–19, Title II, §§ 2001 *et seq.*, 109 Stat. 240, 240–48 (1995) (the "Rescissions Act").

Presidential directive concerning implementation of the Rescissions Act, and the public trust doctrine. The parties filed opposing motions for summary judgment and waived oral argument.

The district court first held that provisions of the Rescissions Act precluded review of the sales under the APA, and its provisions further limited review of salvage timber sales to those challenged within 15 days after initial advertisement by the Forest Service. Of the challenged sales, only the Thunderbolt sale and the Lower Elkhorn sale satisfied this limitation.

The court then considered these two sales under the limited standard of review in the Rescissions Act and concluded that in neither case was the Forest Service's decision arbitrary and capricious, and thus neither sale violated the Rescissions Act. Finally, the court concluded that the Forest Service had not violated its obligations under a Presidential directive pertaining to the Rescissions Act, nor did it violate the federal "public trust" doctrine.

## ANALYSIS

### A. Standard of Review

■ A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is reviewed de novo. *Franceschi v. Schwartz*, 57 F.3d 828, 830 (9th Cir.1995). A grant of summary judgment is also reviewed de novo. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995).

### B. Discussion

We agree with the district court that review of the challenged timber sales is precluded under the APA and that the unadvertised or withdrawn sales were not ripe for review.

The APA provides for review of agency actions "for which there is no adequate remedy in a court...." 5 U.S.C. § 704. The APA also states that "[n]othing herein (1) affects other limitations on judicial review ...; or (2) confers authority to grant relief if any other statute ... expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702.

Section 2001(f) of the Rescissions Act provides:

(f) Judicial Review.—

(1) Place and Time of Filing.—A salvage timber sale to be conducted under subsection (b) ... shall be subject to judicial review only in the district court for the district in which the affected Federal lands are located. Any challenge to such sale must be filed in district court within 15 days after the date of initial advertisement of the challenged sale.

\* \* \* \*

(4) Standard of Review.—The courts shall have authority to enjoin permanently, order modifications of, or void an individual salvage timber sale if it is determined by a review of the record that the decision to prepare, advertise, offer, award, or operate such sale was arbitrary and capricious or otherwise not in accordance with applicable law (other than those laws specified in subsection (i)).

■ Review under the APA is not available because the Rescissions Act provides the remedy sought by the ISC under the APA. As the district court stated:

Here, the relief sought by ISC—the permanent injunction of all salvage timber sales in the Boise and Payette National Forests—is relief expressly provided for by the Rescissions Act, and thus ISC is not without remedy in a court.

Because § 2001(f) of the Rescissions Act provides a specific mechanism for judicial review and offers a remedy, if appropriate, for every salvage timber sale, the APA is not applicable to timber sales covered by the Rescissions Act.

ISC notes that subsection (f)(3) of the Rescissions Act provides, "Section 705 of title 5, United States Code, shall not apply to any challenge to such a sale." ISC contends that the explicit exclusion of this single provision of the APA implies a general reviewability of agency timber sale decisions under the APA.

We disagree. Considering the Rescissions Act as a whole, the reference to 5

U.S.C. § 705 merely serves to clarify and make explicit the comprehensiveness of the prohibition on restraining orders, preliminary injunctions, and relief pending review. By expressly excluding that provision in the Rescissions Act, Congress intended to forestall any attempt to obtain such relief under the APA based on the fact that that particular remedy is *not* available under the Rescissions Act. For a discussion of reasons why remedies under the APA are not available for "Option 9" sales, authorized under § 2001(d) of the Rescissions Act, as distinguished from "salvage timber sales," authorized under § 2001(b), see *Oregon Natural Resources Council v. Thomas,* 92 F.3d 792 (9th Cir.1996).

■ We also agree with the district court that five of the sales were not ripe for review under the Rescissions Act. Subsection (f)(1) provides that: "Any challenge to such sale must be filed in such district court within 15 days *after the date of initial advertisement* of the challenged sale. The Secretary concerned may not agree to, and a court may not grant, a waiver of the requirement of this paragraph." All of the salvage timber sales at issue in this appeal fall within the applicable time scope of the Rescissions Act. However, four of the sales had *not* been advertised prior to ISC's filing of the complaint, and a fifth sale had been withdrawn. The only sales properly before this court are the Thunderbolt sale and the Lower Elkhorn sale.

ISC also argues that the sales must be set aside because the Rescissions Act is ambiguous about whether substantive federal environmental laws must be satisfied and because the Forest Service's decision to proceed with the sales violated a Presidential directive regarding implementation of the Rescissions Act and an interagency Memorandum of Agreement ("MOA") regarding the Act.

In his directive the President stated:

I intend to carry out the objectives of the relevant timber-related activities authorized by Public Law 104–19. I am also firmly committed to doing so in ways that, to the maximum extent allowed, follow our current environmental laws and programs. Public Law 104–19 gives us the discretion to apply current environmental standards to the timber salvage program, and we will do so. With this in mind, I am directing each of you ... to move forward expeditiously to implement these timber-related provisions in an environmentally sound manner, in accordance with my Pacific Northwest Forest Plan, other existing forest and land management policies and plans, and existing environmental laws, except those procedural actions expressly prohibited by Public Law 104–19.

... I am directing that you enter into a Memorandum of Agreement ... to make explicit the new streamlining procedures, coordination, and consultation actions that I have previously directed you to develop and that you have implemented under existing environmental laws.

The MOA stated:

THE PARTIES AGREE TO

1. Comply with previously existing environmental laws except where expressly prohibited by Public Law 104–19, notably in the areas of administrative appeals and judicial review. In particular, the parties agree to implement salvage sales under Public Law 104–19 with the same substantive environmental protection as provided by otherwise applicable environmental laws and in accordance with the provisions of this MOA.

2. ... Adhere to the standards and guidelines in applicable Forest Plans and Land Use Plans and their amendments and related conservation strategies....

ER Tab 7 at 3.

Although it concedes that it can find no authority supporting its contention, ISC argues that the directive and MOA have the force of an interpretive law due to an ambiguity in the Rescissions Act regarding the applicability of substantive environmental laws.

Section 2001(i) provides

(i) Effect on Other Laws.—The documents and procedures required by this section for the preparation, advertisement, offering,

awarding and operation of any salvage timber sale subject to subsection (b) ... shall be deemed to satisfy the requirements of the following applicable Federal laws (and regulations implementing such laws):

(1) The Forest and Rangeland Renewable Resources Planning Act of 1974 (16 U.S.C. 1600 et seq.)

(2) The Federal Land Policy and Management Act of 1976 (43 U.S.C. 1701 et seq.)

(3) The National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.)

(4) The Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.)

(5) The National Forest Management Act of 1976 (16 U.S.C. 472a et seq.)

(6) The Multiple–Use Sustained–Yield Act of 1960 (16 U.S.C. 528 et seq.)

(7) Any compact, executive agreement, convention, treaty, and international agreement, and implementing legislation related thereto.

(8) All other applicable Federal environmental and natural resource laws.

Whereas subsection (i) deems only the "documents and procedures" provisions of these laws satisfied, subsection (f)(4) expressly states that a reviewing court is to overturn or modify a sale which is "arbitrary and capricious or otherwise not in accordance with applicable law *other than those laws specified in subsection (i)* ". ISC argues that subsection (f)(4) should be understood to refer merely to the *procedural* provisions of the laws specified in subsection (i).

We disagree. In *Inland Empire Public Lands Council v. Glickman,* 88 F.3d 697 (9th Cir. as amended July 15, 1996), we held that

[t]he Rescissions Act provides for extremely limited judicial review.... Review of salvage timber sales is ... limited in that "(1) review is based on the administrative record only; (2) the standard of review is arbitrary and capricious or otherwise not in accordance with applicable law; and (3) *the sale is not subject to any federal environmental or natural resources laws.*"

*Id.* at 701 (citation omitted and emphasis added).

■ *Inland Empire* makes it clear that we are not to review an agency salvage timber sale decision to determine if it complies with any other federal environmental or natural resource law. ISC has not established that the Presidential directive or the MOA, to the extent that they may constitute enforceable law, would provide an independent source of *nonenvironmental law* under which we would be permitted to review the salvage timber sales. Thus, we have no authority to review the Presidential directive or the MOA because of our holding in *Inland Empire* and because of the plain language of the Rescissions Act.

Further, ISC has not established standing to assert the alleged violations of the interagency agreement. The MOA explicitly provides: "This Memorandum of Agreement is intended only to improve the internal management of the Federal Government and does not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person."

■ Because we lack authority to review salvage timber sales covered by the Rescissions Act under any other environmental law, we cannot consider ISC's claim that the Forest Service breached its duty to protect the public resource trust. Section 2001(f)(4) precludes review of the Forest Service's decision under that natural resource law.

■ Finally, with respect to the Thunderbolt and Lower Elkhorn salvage timber sales, ISC argues in sum that

[t]he overwhelming weight of evidence in the administrative record supports the conclusion that the challenged projects will likely have significant and irreversible adverse impacts on endangered species and their critical habitat.

As already noted, the Rescissions Act precludes review of the agency decision under all other Federal environmental and natural resource laws. § 2001(f)(4); *Inland Empire* at 701. Instead, we review the administrative record to determine whether, within the limited scope prescribed by the Rescissions Act, the

agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Dioxin/Organochlorine Center v. Clarke*, 57 F.3d 1517, 1521 (9th Cir.1995) (citations omitted) (interpreting general meaning of arbitrary and capricious review under the APA.)

█ The Forest Service set before it the reasonable goal of implementing the Rescissions Act's intended purpose of salvaging timber and making specific amendments to forest plans allowing for the sales. The Forest Service had discretion over the information to be included in reaching its timber sale decisions and the discretion to determine whether those decisions complied with existing forest management plans and guidelines. § 2001(c)(1); *Inland Empire* at 702–03. While the administrative record reflects disagreement in the opinions and recommendations of various federal agencies consulted by the Forest Service before reaching its decisions with respect to the Thunderbolt and Lower Elkhorn sales, the Forest Service was entitled to rely on the opinions and recommendations of its own experts. As we stated in *Inland Empire*, "[n]othing requires [the Secretary] to adopt all of the specific recommendations of a report upon which he relies." 88 F.3d at 702. The administrative record sufficiently supports the decisions of the Forest Service with respect to the Thunderbolt and Lower Elkhorn salvage timber sales.

AFFIRMED.