SOUTHWEST CENTER FOR BIOLOGI-
CAL DIVERSITY, a non-profit cor-
poration, Plaintiff–Appellant,

v.

U.S. FOREST SERVICE; John McGee,
Forest Supervisor, Coronado National
Forest; Dan Glickman, Secretary of the
Department of Agriculture, Defendants–
Appellees.

No. 96–15756.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 11, 1996.

Decided November 19, 1996.

Geoff Hickcox, Kenna and Associates, Durango, CO, for plaintiff-appellant.

Lisa E. Jones, United States Department of Justice, Environment and Natural Resources Division, Washington, D.C., for defendants-appellees.

Before JAMES R. BROWNING, D.W. NELSON and FERNANDEZ, Circuit Judges.

D.W. NELSON, Circuit Judge:

The Southwest Center for Biological Diversity appeals the district court's grant of summary judgment in favor of the United States Forest Service in Southwest Center's action claiming that a proposed sale of salvage timber in the Coronado National Forest violates the Rescissions Act of 1995, Pub.L. No. 104–19, § 2001, 109 Stat. 194, 240–47. The Rescissions Act provides that the Secretary of Agriculture shall prepare an Environ-

mental Assessment (EA) under the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4335, and a Biological Evaluation (BE) under the Endangered Species Act (ESA), 16 U.S.C. §§ 1531–1544, for each proposed salvage timber sale.

Southwest Center claims that (1) the Biological Assessment and Evaluation (BA & E) prepared by the Forest Service did not comply with the documentation requirements of the Rescissions Act; (2) the Forest Service's conclusion in the BA & E that the timber sale would not affect the Mexican Spotted Owl is arbitrary and capricious; (3) the issuance of a categorical exclusion that exempted the sale from further analysis under NEPA was also arbitrary and capricious; and (4) the district court erred by granting the defendant's motion to strike extra-record documents.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm. We conclude that the Forest Service's documentation in this case met the requirements of the Rescissions Act, and that the Forest Service's conclusions were not arbitrary and capricious.

## BACKGROUND

The Rescissions Act of 1995[1] is an appropriations measure that includes provisions to expedite the award of salvage timber sale contracts. An authorized agency may propose a salvage timber sale if "an important reason for entry includes the removal of disease- or insect-infested trees, dead, damaged, or down trees, or trees affected by fire or imminently susceptible to fire or insect attack." § 2001(a)(3). Section 2001(c)(1) of the Act sets forth streamlined procedures pursuant to which the Secretary of Agriculture must prepare, advertise, offer, and award all contracts for salvage timber sales on National Forest Lands. For each proposed sale, the Secretary must prepare an EA under NEPA and a BE under the ESA.[2] The sales

---

1. "The Rescissions Act" refers throughout this opinion to The Emergency Supplemental Appropriations for Additional Disaster Assistance, for Antiterrorism Initiatives, for Assistance in the Recovery from the Tragedy that Occurred at Oklahoma City, and Rescissions Act of 1995, Pub.L. No. 104–19, § 2001, 109 Stat. 194, 240–47.

2. Section 2001(c)(1)(A) of the Rescissions Act provides that:

   For each salvage timber sale conducted under subsection (b), the Secretary concerned shall prepare a document that combines an environmental assessment under section 102(2) of the National Environmental Policy Act of 1969 (42

are otherwise exempt from all applicable federal environmental and natural resource laws. § 2001(i).

In February 1995, the Forest Service determined that a portion of the Coronado National Forest that had been damaged by a 1994 forest fire would be appropriate for harvest. The Forest Service designated 69 of the 27,500 acres burned in the Rattlesnake fire as suitable for salvage and proposed the Rustler Salvage Timber Sale. On May 30, 1995, the Forest Service sent a letter to interested members of the public announcing the plan to salvage the fire-damaged timber and proposing a genetic rehabilitation project in conjunction with the sale.

On August 14, 1995, a Forest Service biologist conducted a BA & E and reported that the planned timber sale would have no effect on any threatened or endangered species within the project area, including the Mexican Spotted Owl. The assessment concluded that the salvage sale would not affect the owl because the burned over salvage area "provides neither foraging nor nesting habitat."

This "no effect" conclusion is in tension with an internal Fish and Wildlife Service policy on agency actions that may affect the Mexican Spotted Owl. The policy was articulated in a memorandum distributed to Fish and Wildlife Service field office supervisors in Arizona and New Mexico. The memorandum states that agency actions within one mile of a Mexican Spotted Owl Protected Activity Center, or actions that alter mixed conifer or pine-oak forest habitats, may affect the Mexican Spotted Owl.

The proposed Rustler Sale implicates both of these conditions. It originally fell within the Rustler Park Management Territory for Mexican Spotted Owls, but the Forest Service eliminated the Rustler Park Territory on May 10, 1995, one month after the Fish and Wildlife Service issued its policy on activities conducted in close proximity to Mexican Spotted Owl Protected Activity Centers and Territories. Although the Rustler Park Territory has been eliminated, the proposed sale still falls within one mile of the Centella Point and Barfoot Protected Activity Centers.

Moreover, there is no dispute that the Rustler Sale will alter mixed conifer and pine-oak habitats. Although the BA & E does not directly address the habitat in the project area, other documents in the record reveal that the habitat is the type identified by the Fish and Wildlife Service in its Mexican Spotted Owl policy. The Archeological Survey completed for the project notes that the vegetation in the project area is "mixed conifer forest," and mentions a "sprouting of shrubby oaks." The BA & E's discussion of the thick-billed parrot also indicates that the project area is not purely a pine-type habitat. Despite the habitat in and location of the project area, the Forest Service determined that the sale would have no effect on the Mexican Spotted Owl.

Relying on the "no effect" determination in the BA & E, the Forest Service further concluded that there were no extraordinary circumstances that would prohibit the issuance of a categorical exclusion from analysis under NEPA. Under Forest Service regulations, absent extraordinary circumstances such as the presence of threatened or endangered species, a categorical exclusion is available for a salvage timber harvest "which removes ... 1,000,000 board feet or less of merchantable wood products; which requires one mile or less of low standard road construction ...; and assures regeneration of harvested or salvaged areas, where required." Forest Service Handbook 1909.15, 31.2, ¶ 4 (1992). The Rustler Sale will remove an estimated 250,000 board feet of dead

U.S.C. 4332(2)) (including regulations implementing such section) and a biological evaluation under section 7(a)(2) of the Endangered Species Act of 1973 (16 U.S.C. 1536(a)(2)) and other applicable Federal law and implementing regulations. A document embodying decisions relating to salvage timber sales proposed under authority of this section shall, at the sole discretion of the Secretary concerned and to the extent the Secretary concerned considers appropriate and feasible, consider the environmental effects of the salvage timber sale and the effect, if any, on threatened or endangered species, and to the extent the Secretary concerned, at his sole discretion, considers appropriate and feasible, be consistent with any standards and guidelines from the management plans applicable to the National Forest or Bureau of Land Management District on which the salvage timber sale occurs.

timber, and it requires no new roads. Pursuant to these regulations, the Forest Service issued a categorical exclusion for the Rustler Sale on November 16, 1995.[3] As a result, no further environmental assessment under NEPA was conducted.

On December 12, 1995, the District Ranger published a notice in the Douglas Daily Dispatch reporting the Forest Service's decision to implement the Rustler Sale. Southwest Center filed its complaint in federal district court on December 27, 1995, seeking declaratory and injunctive relief and alleging that the Forest Service's decision to proceed with the Rustler Sale violated the Rescissions Act and was arbitrary and capricious.

On cross-motions for summary judgment, the district court found that the failure to prepare a combined EA/BE was not a per se violation of the Rescissions Act. The court also concluded that neither the "no effect" finding nor the categorical exclusion relying on it was arbitrary and capricious. Accordingly, the district court granted the Forest Service's motion for summary judgment. The district court also struck all of the documents submitted by the parties that did not form part of the administrative record compiled by the Forest Service.

### STANDARD OF REVIEW

Although it narrows judicial review, § 2001(f)(4) of the Rescissions Act provides that the district court has the authority to permanently enjoin, order modification of, or void an individual salvage sale "if it is determined by a review of the record that the decision to prepare, advertise, offer, award, or operate such sale was arbitrary and capricious or otherwise not in accordance with applicable law (other than those laws specified in subsection (i))."

■ Guided by this standard, we review de novo the district court's grant of summary judgment in favor of the Forest Service. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* ── U.S. ──, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). We

must determine, viewing the evidence in the light most favorable to Southwest Center, whether the district court correctly applied the relevant substantive law. *Id.* In making this determination, we consider de novo the district court's interpretation of § 2001. *Spain v. Aetna Life Ins. Co.,* 11 F.3d 129, 131 (9th Cir.1993), *cert. denied,* ── U.S. ──, 114 S.Ct. 1612, 128 L.Ed.2d 340 (1994); *Mt. Graham Red Squirrel v. Espy,* 986 F.2d 1568, 1571 (9th Cir.1993).

■ We review the district court's decision to exclude extra-record evidence for an abuse of discretion. *Friends of the Payette v. Horseshoe Bend Hydroelectric Co.,* 988 F.2d 989, 997 (9th Cir.1993).

### DISCUSSION

#### I. Adequacy of the Forest Service's Documentation

Section 2001(c) of the Rescissions Act calls for the preparation of a BE under the ESA and an EA under NEPA. For the Rustler Sale, the Forest Service completed a BA & E and then issued a categorical exclusion releasing the Forest Service from the obligation to prepare an EA under NEPA. Because the record supporting the Rustler Sale complies with the provisions of the ESA and NEPA incorporated into section 2001(c)(1)(A), we hold that the BA & E and the categorical exclusion issued by the Forest Service meet the demands of the Rescissions Act.

■ Southwest Center has not established that the BA & E issued by the Forest Service violates the ESA or its implementing regulations. The ESA requires agencies to consult with the Fish and Wildlife Service whenever their actions "may affect listed species or critical habitat." 50 C.F.R. § 402.14(a). Here, however, the Forest Service made an initial determination that the Rustler Sale would have no effect on the Mexican Spotted Owl. That finding obviates the need for formal consultation under the ESA. *See Pacific Rivers Council v. Thomas,* 30 F.3d 1050, 1054 n. 8 (9th Cir.1994) ("[I]f

**3.** On December 8, 1995, the Forest Service withdrew the timber sale and reissued it on the same day. The alteration eliminated the inclusion of sawtimber in the Rustler Sale, which would have violated an ongoing injunction on the harvest of sawtimber in the Coronado National Forest.

the agency determines that a particular action will have no effect on an endangered or threatened species, the consultation requirements are not triggered."), *cert. denied,* —— U.S. ——, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995).

Moreover, NEPA and its implementing regulations allow for the issuance of a categorical exclusion in place of an EA in some cases. The regulations provide that "neither an environmental assessment nor an environmental impact statement is required" for "actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency." 40 C.F.R. § 1508.4. The issuance of a categorical exclusion for the Rustler Sale, therefore, does not violate NEPA. In fact, Southwest Center does not contest the general availability of categorical exclusions under the Rescissions Act.

■ We disagree with Southwest Center's argument that, because the Forest Service did not submit a combined EA/BE, the form of the BA & E and the categorical exclusion constitutes a per se violation of the Rescissions Act. The documentation mandated by the Rescissions Act is not an empty obligation; it requires the Forest Service to examine and record the potential environmental and biological consequences of a salvage timber sale. But the Act also vests sole discretion in the Secretary to determine the "scope and content of the documentation and information prepared, considered, and relied on." § 2001(c)(1)(C).

The Forest Service contends that, if we are to give effect to both the requirements of § 2001(c)(1)(A) and the grant of broad discretion in the statute, we cannot declare the EA/BE requirement an absolute one. *See Heckler v. Chaney,* 470 U.S. 821, 829, 105 S.Ct. 1649, 1654–55, 84 L.Ed.2d 714 (1985) (stating that "sections of a statute generally should be read 'to give effect, if possible, to every clause'") (quoting *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955)). Where a statute is ambiguous, "the question for the court is whether the agency's answer is based on a permissible construction of the statute."

*Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2779, 81 L.Ed.2d 694 (1984). Here, we must defer to the Secretary's permissible conclusion that a document other than a combined EA/BE, so long as it complies with NEPA and the ESA, may be submitted to satisfy § 2001(c)(1)(A).

## II. Review of the Forest Service's Conclusions

Southwest Center argues not only that the BA & E and the categorical exclusion breach the formal obligations of the Rescissions Act, but also that the documents are substantively inadequate. We disagree with Southwest Center's argument that the "no effect" conclusion in the BA & E is arbitrary and capricious. The Forest Service did not abuse the broad discretion Congress granted it in the Rescissions Act.

■ Despite the habitat type in the project area, and its proximity to Mexican Spotted Owl territory, the Forest Service concluded that the Rustler Sale would not affect the Mexican Spotted Owl. The gaps and imperfections in the Forest Service's analysis, however, do not rise to the level of an arbitrary and capricious decision. An agency's decision may only be called arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983); *Dioxin/Organochlorine Center v. Clarke,* 57 F.3d 1517, 1521 (9th Cir.1995). "This inquiry must be 'searching and careful,' but 'the ultimate standard of review is a narrow one.'" *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401

U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971)).

■ According to Southwest Center, the disregard for the Fish and Wildlife Service's Mexican Spotted Owl policy constitutes a failure "to consider an important aspect of the problem." But the Forest Service had no obligation to consider the views of other agencies in approving the salvage timber sale. § 2001(c)(1)(A) & (C). Formal consultation under the ESA was not required. *See* 50 C.F.R. § 402.14(a). And Southwest Center cannot rely on the "Memorandum of Agreement" entered into by the agencies responsible for implementing the Rescissions Act. The Memorandum includes a commitment to involve the Fish and Wildlife Service in the development process for salvage sales. Southwest Center concedes, however, that the Memorandum created no legal obligation for the signatory agencies to consult with the Fish and Wildlife Service. Furthermore, the Ninth Circuit has held that courts should not review allegations of noncompliance with statements that are not binding on agencies. *Western Radio Services Co., Inc. v. Espy,* 79 F.3d 896, 900 (9th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 80, — L.Ed.2d — (1996).

Even if the Fish and Wildlife Service had contested the BA & E, recent decisions of this court make clear that the Forest Service may ignore the views of other agencies in approving salvage timber sales. In *Inland Empire,* the Ninth Circuit determined that under § 2001(c)(1)(A) of the Rescissions Act, the Forest Service had no obligation to address specific recommendations of an interagency task force concerning the effects of a project on the grizzly bear, a threatened species. *Inland Empire Pub. Lands Council v. Glickman,* 88 F.3d 697, 701–03 (9th Cir. 1996). Even if the Forest Service erred by ignoring some relevant factors, it "had discretion to disregard entirely the effect on the grizzly bear." *Id.* at 701.

The court's holding in *Inland Empire* rested in part on its finding that the Forest Service had discussed all of the factors that potentially endangered the grizzly bear's habitat. In the case before us, the Forest Service has not been as thorough in its analysis with respect to the Mexican Spotted Owl. Nonetheless, the Forest Service's "no effect" conclusion is not "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2867.

In *Idaho Sporting Congress,* this court emphasized the deference owed to administrative agencies when there are differences of opinion as to the impact of the agency's proposed action: "While the administrative record reflects disagreement in the opinions and recommendations of various federal agencies consulted by the Forest Service before reaching its decisions with respect to the ... sales, the Forest Service was entitled to rely on the opinions and recommendations of its own experts." *Idaho Sporting Congress, Inc. v. United States Forest Serv.,* 92 F.3d 922, 928 (9th Cir.1996). Another recent Ninth Circuit case, *Idaho Conservation League v. Thomas,* also illustrates the deference owed to the Forest Service despite substantial interagency disagreement and considerable evidence that a salvage logging project poses severe environmental risks. 91 F.3d 1345, 1349 (9th Cir.1996) (finding that expert analysis provided a rational connection between the evidence and the Forest Service's decision to proceed with the sale); *see also Greenpeace Action v. Franklin,* 14 F.3d 1324, 1333 (9th Cir.1992) ("To set aside the Service's determination in this case would require us to decide that the views of Greenpeace's experts have more merit than those of the Service's experts, a position we are unqualified to take.").

Given these recent interpretations of the Rescissions Act, we conclude that the "no effect" finding in the BA & E was not arbitrary and capricious. The categorical exclusion issued for the Rustler Sale relies on this "no effect" finding. *See* 40 C.F.R. § 1508.4 (categorical exclusions are available where an agency determines that an action will have no effect on the human environment). Therefore, we must also reject Southwest Center's assertion that the Forest Service's issuance of a categorical exclusion from documentation under NEPA is arbitrary and capricious.

█ Furthermore, we disagree with Southwest Center's contention that the Forest Service violated its own regulations in issuing the categorical exclusion. The Forest Service Manual states that a categorical exclusion is only appropriate where "there are no extraordinary circumstances related to the proposed action." FSH 1909.15, 30.3 ¶ 1. The presence of "[t]hreatened and endangered species or their critical habitat" constitutes an extraordinary circumstance. *Id.* at ¶ 2(b). Southwest Center points to the Forest Service's failure to consider the possible presence of the Mexican Spotted Owl in the project area. Arguably, the owls or their habitat could be "present" despite the determination that the project would have "no effect" on them. However, Southwest Center cannot rely on the Forest Service Manual and Handbook, as this court has determined that it does not have the independent force and effect of law. *Western Radio,* 79 F.3d at 900–01 (denying claim that the Forest Service acted arbitrarily and capriciously by following a procedure that did not comply with the guidelines in its Manual and Handbook). Moreover, the Ninth Circuit has held that an agency may issue a categorical exclusion even where threatened or endangered species are present if the agency determines that the project will not impact negatively on the species. *Pyramid Lake Paiute Tribe v. U.S. Dep't of the Navy,* 898 F.2d 1410, 1414–16, 1420 (9th Cir.1990). We find that the Forest Service did not abuse its discretion in issuing the categorical exclusion for the Rustler Sale.

### III. Exclusion of the Extra-record Documents

█ Finally, we conclude that the district court properly struck extra-record documents submitted by Southwest Center. Judicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Nevada Land Action Ass'n v. U.S. Forest Serv.,* 8 F.3d 713, 718 (9th Cir.1993). Review may, however, be expanded beyond the record if necessary to explain agency decisions. *Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir.1988). This circuit has only allowed extra-record materials:

(1) if necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) "when the agency has relied on documents not in the record," or (3) "when supplementing the record is necessary to explain technical terms or complex subject matter."

*Inland Empire,* 88 F.3d at 703–04 (quoting *Friends of the Payette,* 988 F.2d at 997). Extra-record documents may also be admitted "when plaintiffs make a showing of agency bad faith." *National Audubon Soc. v. U.S. Forest Serv.,* 46 F.3d 1437, 1447 n. 9 (9th Cir.1993).

Southwest Center contends that the district court should not have struck a memorandum written by the Regional Forester of the Southwest Region or maps of Mexican Spotted Owl territories with accompanying declarations. According to Southwest Center, the administrative record is inadequate, and the court must consider extra-record documents in order to analyze whether the Forest Service has considered all of the relevant factors in its decision to approve the Rustler Sale.

█ The letter to Forest Supervisors from the Regional Forester, dated January 25, 1996, details interagency consultation procedures required for compliance with the ESA in salvage timber sales under the Rescissions Act. The procedures described were not followed in the case of the Rustler sale. The letter is dated over a month after the Forest Service completed the approval procedures for the Rustler sale. Southwest Center argues that it interprets law that was in effect at the time the salvage timber sale was approved. The letter, however, constitutes post-decision information, which may not be advanced as a new rationalization either for sustaining or attacking an agency's decision. *See Association of Pac. Fisheries v. EPA,* 615 F.2d 794, 811–12 (9th Cir.1980) (citing *Bunker Hill Co. v. EPA,* 572 F.2d 1286, 1292

(9th Cir.1977)). The district court did not abuse its discretion in striking the letter from the Regional Forester.

▮ Southwest Center also seeks to maintain in the record maps and declarations concerning the habitat type in the project area and the sale's proximity to Mexican Spotted Owl territories. But that information already exists in the record. The Archeological Survey and the BA & E both indirectly note the type of vegetation in the project area. Moreover, although the Forest Service does not discuss explicitly the Fish and Wildlife Service's policy on Mexican Spotted Owl territories, the BA & E notes that the "proposed project area is outside of any currently designated MSO core area or territory." The record also contains a letter from the Arizona Game and Fish Department that points out to the Forest Service that "there is a Mexican spotted owl management territory in the area."

The information contained in these documents can either be extracted from the record or is not necessary to this court's review of the Forest Service's action. Although the documents Southwest Center seeks to include "might have supplied a fuller record," they do not "address issues not already there." *Friends of the Earth v. Hintz*, 800 F.2d 822, 829 (9th Cir.1986) (holding that the district court properly limited review to the administrative record). The district court, therefore, did not abuse its discretion in striking the maps and declarations submitted by Southwest Center.[4]

### CONCLUSION

Congress enacted the Rescissions Act in order to expedite salvage timber sales by streamlining administrative procedures. *See* H.R. Conf. Rep. No. 124, 104th Cong., 1st Sess. 134 (1995). Yet the Rescissions Act preserves the obligation to review proposed sales under specified provisions of the ESA and NEPA. The Forest Service fulfilled that responsibility by submitting the BA & E and issuing a categorical exclusion for the Rustler Sale. With respect to the substance of the documents, it is apparent that the BA & E's "no effect" conclusion contradicts the Fish and Wildlife Service's policy. However, both the Rescissions Act and fundamental tenets of administrative law constrain our review of the Forest Service's decision. The threshold for declaring an agency action arbitrary and capricious is a high one, raised still higher by the broad grant of discretion in the Rescissions Act.

Congress has seen fit to accord agencies great flexibility in proposing and completing salvage timber sales. It is not for this court to reconsider Congress's policy decision. Accordingly, we affirm the district court's grant of summary judgment for the Forest Service.

AFFIRMED.

---

4. The district court also struck an extra-record declaration submitted by the Forest Service, but the Forest Service does not appeal that decision.