Andy MAHLER, Plaintiff–Appellant,

v.

UNITED STATES FOREST SERVICE, Kenneth Day, Forest Supervisor, Hoosier National Forest, et al., Defendants–Appellees.

Andy MAHLER, Plaintiff–Appellant,

v.

UNITED STATES FOREST SERVICE, Kenneth Day, Forest Supervisor, Hoosier National Forest, et al., Defendants–Appellees.

Nos. 97–1117, 97–1253.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1997.

Decided Oct. 20, 1997.

was entitled to enforce the briefing schedule in order to control its busy trial calendar.

Andy Mahler, Paoli, IN, Richard E. Condit, Washington DC, Mick G. Harrison (argued on behalf of the Appellant in both Appeals), Berea, KY, for Plaintiff–Appellant.

Judith A. Stewart, Office of the United States Attorney, Indianapolis, IN, Albert M. Ferlo, Tamara N. Rountree (argued), Department of Justice, Land & Natural Resources Division, Washington, DC, for Defendant–Appellee U.S. Forest Service in 97–1117.

Sue Hendricks Bailey, Office of the United States Attorney, Indianapolis, IN, Albert M. Ferlo, Tamara N. Rountree (argued), Department of Justice, Land & Natural Resources Division, Michael J. Robinson, Department of Justice, Environment & Natural Resources Division, Washington, DC, for Defendant–Appellee U.S. Forest Service in 97–1253.

James Gilliland, Department of Agriculture, Office of the General Counsel, Washington, DC, for Defendant–Appellee Dan Glickman.

Sue Hendricks Bailey, Office of the United States Attorney, Indianapolis, IN, Michael J. Robinson, Department of Justice, Environment & Natural Resources Division, Washington, DC, for Defendant–Appellee Kenneth Day.

Sue Hendricks Bailey, Office of the United States Attorney, Indianapolis, IN, Michael J. Robinson, Department of Justice, Environment & Natural Resources Division, Washington, DC, for Defendant–Appellee for Defendant–Appellee Hoosier National Forest.

Before COFFEY, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

In these consolidated appeals, Andy Mahler seeks review of two separate decisions of the United States District Court for the Southern District of Indiana. In each ruling, the district court upheld a twenty-day public notice and comment period concerning environmental assessments prepared on salvage sales conducted pursuant to the Rescissions Act. For the reasons set forth in the following opinion, we affirm the decisions of the district court.

I

BACKGROUND

The forest salvage operations at issue involve the Pleasant Run Unit of the Hoosier National Forest, about 500 acres of which were heavily damaged by a severe storm and tornado that swept across portions of that unit on April 19, 1996. According to the scoping letter sent to solicit public comment by Forest Supervisor Kenneth G. Day on May 16, 1996, the storm's effects were compounded by damage from heavy snows and winds earlier in the year. R.14, A1 at 1. The letter detailed the damage caused by the storm and the hazards created by the downed trees. A map of the damaged area and photographs of felled trees in the area were enclosed. Id. at 2–3. The letter stated that "[s]alvage of this material should begin as soon as possible if salvaged material is to be usable." Id. at 1. The Forest Supervisor sought comments by June 17, 1996 (32 days from the date of the letter), on his proposal for emergency salvage of the damaged trees on the Pleasant Run Unit. Id.

After the first public comment period, the Forest Service prepared an "environmental assessment" ("EA") for each Pleasant Run Timber Salvage Project, which was located in the northern portion of the Brownstown Ranger District, between State Highway 446 and Highway 135 in Lawrence and Jackson Counties, Indiana. One EA assessed the advisability of harvesting 162 acres of storm-damaged *pine* from that area. R.14, A3 at 48. The other EA reviewed the reasons for removing storm-damaged *hardwood* timber from 55 stands in that sector of the forest. Forest Supervisor Day recommended harvesting 3,138 thousand board feet of hardwoods on 752 acres. Id. at 47. He explained that taking no action would be unwise, for it would not "meet the need to reduce fire hazard, reduce risk to nearby healthy hardwood trees from insects, reduce the safety hazard from weakened trees, or improve access to National Forest System land." Id. The two projects are appropriately named the Pleasant Run Emergency Pine Salvage Project and the Pleasant Run Emergency Hardwood Salvage Project.

For each project, the Forest Service provided a twenty-day period for public comment.[1] In determining that a twenty-day period of comment was appropriate, the Forest Service relied upon a Memorandum of Agreement ("MOA") entered into by the Departments of Agriculture, the Interior, and Commerce with the Environmental Protection Agency. This interdepartmental MOA, dated August 9, 1995, provided for a twenty-day public comment period on environmental assessments prepared under the Rescissions Act.[2]

---

1. The letter seeking comments on the EA for the Pine Salvage project was dated August 15, 1996. It announced that the legal notice concerning the project would be published in the Bloomington Herald–Times newspaper on Sunday, August 18, 1996, and that comments must be postmarked or received within 20 days of that date. The letter seeking comments on the EA for the Hardwood Salvage project was dated September 6, 1996. It announced the publication of a legal notice on September 8, 1996, and required comment (by postmark or receipt) within 20 days of that date. R.14, A.3 at 47, 48.

2. This interdepartmental MOA was established at the direction of President Clinton (R.17, At-

tach.C) "to reaffirm the commitment of the signatory parties to continue their compliance with the requirements of existing environmental law while carrying out the objectives of the timber salvage related activities authorized by Public Law 10419," the Rescissions Act. R.17, Attach. B at 26. The signatories are the Under Secretary for Natural Resources and Environment in the Department of Agriculture and the Chief of the Department of Agriculture's Forest Service; the Department of Commerce's Assistant Secretary for Oceans and Atmosphere and its Director of the National Marine Fisheries Service; and the Department of the Interior's Assistant Secretary for Fish and Wildlife and Parks, its Assistant Secretary for Land and Minerals Management,

Mr. Mahler challenged this twenty-day period. He contended that the interdepartmental MOA was contrary to the Public Participation Law, 16 U.S.C. § 1612 Note. The district court, each case being decided by a different judge of that court, determined that the Secretary of Agriculture, acting through the Chief of the Forest Service,[3] had acted within his statutory authority.

## II

## DISCUSSION

### A. Statutory and Regulatory Framework

At the outset of our analysis, we turn to a discussion of the statutory and regulatory framework that must govern our review.

1. The Rescissions Act.[4] Signed into law on July 27, 1995, this Act was designed to provide a statutory matrix for the government's salvage timber sales on national forest lands. The statute provides for the expeditious removal of dead and dying trees from the national forests. The Act addresses, among many other matters, the obligation of the Secretary to develop a document that combines an environmental assessment under the National Environmental Policy Act and a biological evaluation under the Endangered Species Act. The statute gives significant discretion to the Secretary on the contents of this document.[5] This statute contains no specific provision requiring public comment on the combined environmental and biological statement. Likewise, it provides for extremely limited judicial review of the decision of the Secretary: Unless the court determines that the decision of the Secretary

---

3. Public lands are administered by the U.S. Forest Service (an agency of the Department of Agriculture) and by the Bureau of Land Management, National Park Service, and Fish and Wildlife Service (three agencies within the Department of the Interior). See Sandra Beth Zellmer, *Sacrificing Legislative Integrity at the Alter [sic] of Appropriations Riders: A Constitutional Crisis*, 21 Harv. Envtl. L.Rev. 457, 457 n. 1 (1997). The federal forest reserves were transferred from the Department of the Interior to the Department of Agriculture in 1905. See 16 U.S.C.A. §§ 472, 559 note.

4. The full title for the Rescissions Act is The Emergency Supplemental Appropriations for Additional Disaster Assistance, for Anti-Terrorism Initiatives, for Assistance in the Recovery from the Tragedy that Occurred at Oklahoma City, and Rescissions Act of 1995, Pub.L. No. 104–19, § 2001, 109 Stat. 194, 240–47. The salvage timber sale provisions of the Rescissions Act expired on December 31, 1996. § 2001(j). Nevertheless, the terms and conditions of that section continue in effect until the completion of performance of the salvage timber sale contracts offered under § 2001(b). *Id.*

5. The Act emphasizes that the Secretary concerned with administering the nation's forests, the Secretary of Agriculture, has complete discretion in the preparation of the document assessing the environmental and biological effects. Section 2001(c) of the Act describes the document in this way:

> A document embodying decisions relating to salvage timber sales proposed under authority of this section shall, *at the sole discretion of the Secretary concerned* and to the extent the Secretary concerned considers appropriate and feasible, consider the environmental effects of the salvage sale and the effect, if any, on threatened or endangered species, and to the extent the Secretary concerned, *at his sole discretion*, considers appropriate and feasible, be consistent with any standards and guidelines from the management plans applicable to the National Forest or Bureau of Land Management District on which the salvage timber sale occurs.

Section 2001(c)(1)(A) (emphasis added). The Act also mandates:

> The scope and content of the documentation and information prepared, considered, and relied on under this paragraph is at *the sole discretion of the Secretary concerned.*

Section 2001(c)(1)(C) (emphasis added).

---

its Director of Fish and Wildlife, and its Director of the Bureau of Land Management. The parties set forth, in this MOA, methods for implementing the salvage sales "with the same substantive environmental protection as provided by otherwise applicable environmental laws." Id. at 27. Among the management procedures agreed to is the twenty-day notice and comment period. The interdepartmental MOA states that the parties

> [a]gree to conduct project analyses and interagency coordination .... in a combined joint environmental assessment (EA) and biological evaluation (BE) called for in Public Law 104–19, except where it is more timely to use existing documents.... For sales that the Secretary determines, in his discretion, ordinarily should require an EA under the land management agencies' NEPA procedures, agencies will prepare the combined EA/BE ... and circulate the analysis for 20 days of public review and comment.

Id. at 28.

is "arbitrary and capricious or otherwise not in accordance with applicable law," the decision of the Secretary must be sustained. *See* § 2001(f)(4) of the Act.

Notably, this statute also addresses the relationship of this regulatory scheme to environmental laws of more general applicability. It specifically provides that the documents and procedures prepared in accordance with the Rescissions Act shall be deemed to satisfy the requirements of the Forest and Rangeland Renewable Resources Planning Act of 1974 ("the Forest Act") as well as all other applicable federal and natural resources laws.

2. The Public Participation Law. This statute, 16 U.S.C. § 1612 Note, establishes a rule of general applicability for notice and public comment of actions contemplated by the Secretary of Agriculture and the Forest Service with respect to national forest land. It provides for a public comment period of thirty days.[6]

3. The Interdepartmental MOA of August 9, 1995. This agreement, which we already have noted was formed pursuant to a Presidential direction, permitted the secretaries to determine that the combined environmental and biological assessment document prepared in salvage timber sales might be circulated for only twenty days.

B. *Analysis*

We believe that Chief Judge Barker provided the correct analysis in determining that the interdepartmental MOA's allowance of a twenty-day public comment period is within the statutory authority of the signatory departments. Like our colleague in the district court, we start our analysis with the terms of the Rescissions Act. It provides that sales made under its terms "shall be deemed to satisfy the requirements" of the Forest Act and the regulations implementing that legislation. The Public Participation Law establishes a notice and comment period for actions taken under the Forest Act and

therefore ought to be considered, for purposes of determining the scope of the exception carved out by the Rescissions Act, an addition to the Forest Act. We think that it is clear that, in enacting the Rescissions Act, Congress intended to provide an expedited procedure for the removal of damaged and diseased timber from the national forests and, to achieve that end, intended that the cognizant department have discretion to adopt more abbreviated procedures than those usually employed when intrusions into the ecology of the national forests are contemplated. Specifically, by mandating that compliance with the terms of the Rescissions Act would constitute compliance with the Forest Act, Congress also abrogated the requirements of the Public Participation Law which can only be viewed, realistically, as part of the Forest Act.

We also believe that the district court was on solid ground in determining, in the alternative, that the Rescissions Act abrogated the pertinent notice provisions of the Public Participation Law. The Rescissions Act provides that any timber sale conducted in accordance with its provisions "shall be deemed to satisfy the requirements of all other applicable Federal environmental and natural resource laws" and their regulations. The Public Participation Law is clearly an "applicable Federal environmental and natural resource law"; its terms govern the notice and public comment period for projects that implement "land and resource management plans."

We therefore conclude that the Interdepartmental Memorandum of Agreement complies with the terms of the Rescissions Act. The Act requires the Secretary to prepare a document that combines an environmental assessment and a biological evaluation. That assessment must consider the environmental effects of the timber sale "at the sole discretion of the Secretary concerned and to the extent that the Secretary concerned considers appropriate and feasi-

---

6. The statute requires the Secretary of Agriculture, acting through the Chief of the Forest Service, to establish a procedure for notice and comment concerning the Forest Service's proposed activities under the Forest Act. The Secre-

tary must give notice of the proposed action and must "accept comments on the proposed action within 30 days after publication of the notice." 16 U.S.C. § 1612 Note (b)(2).

ble." We believe this language clearly authorizes the Secretary to permit a shorter period for public comment than that usually required under the Public Participation Law.[7]

Conclusion

The judgments of the district courts are affirmed.

AFFIRMED

---

7. The House Conference Report 104–124, emphasizing the emergency nature of the forest health situation, states:

> Much of this salvage volume must be removed within one year or less for the timber of [sic] retain maximum economic value, and to prevent future disasters from fire that can permanently damage forest land, eradicate wildlife, and ruin aquatic habitat. Therefore, the managers have included bill language to provide all necessary tools to expedite environmental processes, streamline, administrative procedures, expedite judicial review, and give maximum flexibility to the Secretary concerned in order to provide salvage timber for jobs, to improve forest health, and prevent future forest fires.

*Id.* at 24. The expedited procedures set forth in § 2001(c) and throughout the statute reflect that concern. The Salvage Act itself emphasizes the expeditious nature of "the removal of disease- or insect-infested trees" and streamlined procedures for selling off the salvage timber. In fact, the Act refers to "*emergency* salvage timber sales." § 2001(c). Under the reporting requirements of § 2001(c)(2), the Secretary is to report to Congress, by August 30, 1995, the salvage sales completed, and to submit reports every six months thereafter "until completion of all salvage timber sales conducted under subsection (b)."