Andy MAHLER, Plaintiff–Appellant,

v.

UNITED STATES FOREST SERVICE, James E. Denoncour, District Ranger, Tell City District, Hoosier National Forest, and Jack W. Thomas, Chief, Defendants–Appellees.

No. 96–4212.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1997.

Decided Nov. 3, 1997.

---

Mick G. Harrison (argued), Bloomington, IN, Richard E. Condit, Washington, DC, for Plaintiff-Appellant.

Sue Hendricks Bailey, Office of the United States Attorney, Indianapolis, IN, Albert M. Ferlo, Ethan G. Shenkman, Department of Justice, Land & Natural Resources Division, Lois J. Schiffer, Department of Justice, Environment Enforcement Section, Robin N. Michael (argued), Department of Justice, Environment & Natural Resources Division, Washington, DC, for United States Forest Service.

Sue Hendricks Bailey, Office of the United States Attorney, Indianapolis, IN, Lois J. Schiffer, Department of Justice, Environment Enforcement Section, Robin N. Michael (argued), Department of Justice, Environment & Natural Resources Division, Washington, DC, for James E. Denoncour.

Sue Hendricks Bailey, Office of the United States Attorney, Indianapolis, IN, for Jack W. Thomas.

Before COFFEY, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Andy Mahler brought this action in the district court under the Rescissions Act of 1995 (Pub.L. No. 104–19) and the Administrative Procedure Act (5 U.S.C. §§ 701–06). He challenged the decision of the United States Forest Service and two of its officials to proceed with salvage timber sales under the provisions of the Emergency Salvage Timber Sale Program enacted in the Rescissions Act. Deciding the case on cross-motions for summary judgment, the district court held that the Secretary had complied with the requirements of the Rescissions Act for an environmental and biological assessment of the proposed timber sales. For the reasons set forth in this opinion, we now affirm the judgment of the district court.

I
BACKGROUND
A.

The dispute between Andy Mahler and the United States Forest Service is based upon conflicting interpretations of § 2001(c) of the

Rescissions Act.[1] Before turning to the facts of this case, therefore, it is helpful to consider an overview of the statute and, in particular, the circumstances that led to the enactment of the Rescissions Act.

Congress recognized that the increasing numbers of dead and dying trees in the Nation's forests posed a serious threat to the health of those forests. It saw great risk to forest land from fire, insect infestation, and disease and believed that removal of salvage timber should be accomplished expeditiously so that reforestation could rejuvenate our forests. *See* H.R. Conf. Rep. No. 104–124, 141 Cong. Rec. H8788–01, at H8795 (daily ed. Sept. 12, 1995). Accordingly, the Rescissions Act's "Emergency Salvage Timber Sale Program" provides the means to expedite both environmental and biological assessments in order to allow the Secretary[2] maximum flexibility for salvaging the greatest amount of timber while improving the health of the forest and reducing the risk of fire. *Id.* Under the Act, the Forest Service may propose a "salvage timber sale" as long as "an important reason for entry includes the removal of disease- or insect-infested trees, dead, damaged, or down trees, or trees affected by fire or imminently susceptible to fire or insect attack." § 2001(a)(3).

In this case, it is undisputed that such a reason existed. A severe snowstorm, sweeping through southern Indiana in March of 1996, uprooted and damaged trees in three parts of the Hoosier National Forest—the Shoals, Lilly Dale and Lick Creek areas.

The Forest Service survey of the Tell City Ranger District of the Forest, where the three areas are located, revealed that the damage posed a threat of forest fire or plant pest and disease if the downed and damaged trees were allowed to dry out and die. The Service therefore sent a scoping notice to more than 900 members of the public (including Mr. Mahler) advising them of the proposal to salvage that timber and requesting comments. Mr. Mahler submitted his objections to the sales.

The Forest Service then reviewed the comments and analyzed site-specific reports concerning the environmental effects of the proposed sales on each area. The Decision Memo prepared for each sale included the following information: an aerial survey of the damaged areas, a biological evaluation ("BE"), a Karst Prescription (which maps and flags the protected "no-soil-disturbance/no-cutting" zones in which caves, sinkholes, swallow holes, karst springs or other karst features have been found, *see* II Admin.R. at 237–42), a cultural resources analysis, a report on the existing conditions of aquatic resources, and studies of the soils and tree types in each area.

On June 26, 1996, the Forest Service issued a BE that evaluated the potential effects of the proposed sales on all threatened and sensitive species identified as potentially having habitats within the timber sale areas. It found there were no federally threatened or endangered species or their habitats in

---

**1.** The Rescissions Act is part of The Emergency Supplemental Appropriations for Additional Disaster Assistance, for Anti–Terrorism Initiatives, for Assistance in the Recovery from the Tragedy that Occurred at Oklahoma City, and Rescissions Act of 1995, Pub.L. No. 104–19, § 2001, 109 Stat. 194, 240–47. The Act was created as a disaster relief bill; the rescissions portion, a rider to the bill, established an emergency salvage timber sale program. The salvage timber sale provisions expired on December 31, 1996, but the terms and conditions of that section continue in effect until the completion of performance of the salvage timber sale contracts offered under § 2001(b). *See* § 2001(j).

**2.** In this case, because the Hoosier National Forest is part of the National Forest System, the Secretary with decision-making authority is the Secretary of Agriculture. Had the lands at issue been under the jurisdiction of the Bureau of Land Management rather than the United States Forest Service, the Secretary concerned with the salvage timber sales would have been the Secretary of the Interior. *See* Rescissions Act § 2001(a)(4).

Public lands are administered by the U.S. Forest Service (an agency of the Department of Agriculture) and by the Bureau of Land Management, National Park Service, and Fish and Wildlife Service (three agencies within the Department of the Interior). See Sandra Beth Zellmer, *Sacrificing Legislative Integrity at the Alter* [sic] *of Appropriations Riders: A Constitutional Crisis*, 21 Harv. Envtl. L.Rev. 457, 457 n. 1 (1997). The federal forest reserves were transferred from the Department of the Interior to the Department of Agriculture in 1905. *See* 16 U.S.C.A. §§ 472, 559 note.

those locations. Further analyses indicated that there were neither erosion-prone areas nor protected research natural areas in the three sites. The Forest Service concluded as well that the salvage timber sales would have no impact on cultural, archaeological or historic resources.

Because each salvage timber sale would harvest less than 1 million board feet of timber, the Service concluded that the sales qualified, under the National Environmental Policy Act ("NEPA"), for a categorical exclusion from documentation in an Environmental Impact Statement ("EIS") or an Environmental Analysis ("EA").

On July 19, 1996, the Forest Service issued its Decision Memo for each salvage sale. *See* Admin.R. A.1, A.2, A.3. The Memos proposed the harvest of an estimated 500,000 board feet of salvage timber from the Lilly Dale and the Shoals salvage sale sites and an estimated 900,000 board feet of salvage timber from the Lick Creek sale site. The Memos concluded that the sales came within the Emergency Salvage Timber Program set forth in § 2001(b) of the Rescissions Act. When the Forest Service approved the sales and advertised for bids, this litigation followed.

### B.

In this action, Mr. Mahler alleged that the Forest Service's decision to proceed with the salvage timber sales violated § 2001 of the Rescissions Act because the Secretary had failed to comply with the analysis and documentation requirements of the Act and had found that the project qualified for a categorical exclusion from an EA.

The district court reviewed the Forest Service's interpretation of the Rescissions Act and determined that the Service's view of the type of document the Secretary needed to produce in assessing the environmental and biological impact of the proposed sale was "based on a permissible construction of the statute." R.28 at 4 (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council,*

*Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)). According to the district court, the Secretary had decided correctly that a full EA did not have to be prepared; instead, only a document combining an EA and a BE was necessary under the statute.

The court then considered the Secretary's view that the agency may avoid the preparation of an EA by relying upon a "categorical exclusion" on the ground that the action will not have a significant effect on the environment. On this point, it disagreed with the Secretary. Acknowledging that *Chevron* usually requires that the court defer to the interpretation of the statute followed by the agency charged by Congress with its administration, the district court nevertheless stated that *Chevron* also required that the court's primary allegiance be to the plain wording of the statute and the manifest intent of Congress. In the court's view, the statute plainly required that the agency produce a document considering environmental and biological effects. In fact, the court noted that such a document was "the lone 'safeguard' placed on the administrative agency." *Id.* at 8.

Nevertheless, the court also determined that the Secretary did consider some environmental effects. The administrative record contained reports, documents and analyses made of these areas by the Forest Service. The court listed the memos and studies made and noted that the Secretary had sole discretion to determine the scope and extent of the biological and environmental analysis that ought to be undertaken. The court concluded that a "simple 'reference to' or 'reproduction of' these resources in the 'document' required by the Rescissions Act is enough to satisfy the deferential standard." *Id.* at 10. The court held that, "because the Secretary considered environmental factors, the decision was not 'arbitrary and capricious or otherwise not in accordance with applicable law.'" *Id.* (quoting § 2001(f)(4)).[3]

---

3. Section 2001(f)(4) sets forth the Rescissions Act's requirements concerning the scope of judicial review:

(4) Standard of review.—The courts shall have authority to enjoin permanently, order modification of, or void an individual salvage timber

## II

## DISCUSSION

### A.

■ We conduct a de novo review of the district court's grant of summary judgment to the Forest Service defendants. In that review we, like the district court, are restricted by the Rescissions Act to a limited scope of judicial review. The decision of the Secretary must be sustained unless it is "arbitrary and capricious." § 2001(f)(4). A decision "is arbitrary and capricious if 'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Inland Empire Public Lands Council v. Glickman*, 88 F.3d 697, 701 (9th Cir.1996) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983)).

### B.

■ Mr. Mahler presents us with a very precise contention. He submits that the Rescissions Act requires that the Secretary create a document that contains both an EA, prepared in accordance with NEPA and its regulations, and a BE, prepared in accordance with the applicable provisions of the Endangered Species Act. There is no question that the Secretary complied with the provisions of the Endangered Species Act; the adequacy of the BE is not in dispute. Mr. Mahler submits, however, that the Secretary did not comply with the remainder of the requirement because the document that he produced did not include an EA but in-

stead relied upon a categorical exclusion from the strictures of NEPA because the proposed salvage timber harvest was less than one million board feet of timber.[4]

Recognizing that our primary duty is to ascertain the intent of Congress, we begin with the language of the Rescissions Act. In pertinent part, it requires that the Secretary prepare a document that combines an environmental assessment under section 102(2) of the National Environmental Policy Act of 1969 (42 U.S.C. § 4332(2)(E)) (including regulations implementing such section) and a biological evaluation under section 7(a)(2) of the Endangered Species Act of 1973 (16 U.S.C. § 1536(a)(2)) and other applicable Federal law and implementing regulations.

§ 2001(c)(1)(A). This statutory provision does not terminate with this congressional command. In the remainder of the same subsection's text, Congress described in more detail its expectations with respect to this document. The provision continues:

At the sole discretion of the Secretary concerned and to the extent the Secretary concerned considers appropriate and feasible, the document prepared under this paragraph must consider the environmental effects of the salvage timber sale and consider the effect, if any, on threatened or endangered species.

*Id.* In addition, the following subsections of the same provision further illumine the path that Congress has chosen. Subsection 2001(c)(1)(B) permits the Secretary, "[i]n lieu of preparing a new document," to use a document prepared under NEPA before the date of enactment of the Rescissions Act as well as information collected in the preparation of that document. The next subsection, § 2001(c)(1)(C), further describes the Secretary's obligation by specifying that the "scope and content of the documentation and

---

sale if it is determined by a review of the record that the decision to prepare, advertise, offer, award, or operate such sale was arbitrary and capricious or otherwise not in accordance with applicable law (other than those laws specified in subsection (i)).

§ 2001(f)(4). This proviso concerning subsection (i), which exempts salvage timber sales from all federal environmental and natural resource laws, is not at issue in this case.

4. The revised environmental policies and procedures, effective September 21, 1992, set forth a guideline that "salvage which removes 1,000,000 board feet or less of merchantable wood products" could be excluded from documentation in an EIS or an EA. *See* 57 FR 43180, 43209 (Sept. 18, 1992); Forest Service Handbook, FSH 1909.15 § 31.2 at ¶ 4.

information prepared, considered, and relied on ... is at the sole discretion of the Secretary."

In our view, these provisions, when read as a totality, make clear that Congress, in order to achieve its goal of ridding the forests of damaged or diseased timber expeditiously, intended to give the Secretary a great deal of procedural and substantive flexibility in his consideration of the environmental and biological impact of the removal of this timber. Thus, under the Rescissions Act, the Secretary may mold the documentation assessing the environmental impact in whatever manner promotes the congressional intent to accomplish quickly the sale of this timber. The Secretary need not produce a single document that incorporates within its physical boundaries all of the Secretary's consideration of environmental concerns. In this regard, we are in agreement with our colleagues in the Ninth Circuit in *Southwest Center for Biological Diversity v. U.S. Forest Service*, 100 F.3d 1443 (9th Cir.1996):

We disagree with Southwest Center's argument that, because the Forest Service did not submit a combined EA/BE, the form of the BA & E and the categorical exclusion constitutes a per se violation of the Rescissions Act. The documentation mandated by the Rescissions Act is not an empty obligation; it requires the Forest Service to examine and record the potential environmental and biological consequences of a salvage timber sale. But the Act also vests sole discretion in the Secretary to determine the "scope and content of the documentation and information prepared, considered, and relied on."

*Id.* at 1448 (quoting § 2001(c)(1)(C)).

■ We also agree with our colleagues in the Ninth Circuit that the Forest Service's use of a categorical exclusion under NEPA does not constitute a violation of the Rescissions Act. *Id.* at 1450. As we have noted earlier in our discussion, the key section of

the Rescissions Act, § 2001(c)(1)(C), provides that an EA is to be prepared according to the requirements of NEPA and its regulations. However, it is certainly compatible with the manifest intent of Congress-that salvage timber be removed expeditiously—to read this subsection to include the regulation that permits an exclusion from the requirement of producing an EA for "actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency." 40 C.F.R. § 1508.4 (defining "categorical exclusion"). The responsible official in the Forest Service determined that the removal of this quantity of timber from a national forest does not have a significant effect on the quality of human life. *Id.*; *see* FSH 1909.15 § 31.2.[5] Notably, in deciding to rely on this categorical exclusion, the district forest ranger did not utilize the section woodenly. Rather, as also required by the regulations, he applied this rule of general applicability only after assuring himself, through a review of environmental information available to him, that there were no extraordinary environmental concerns that would require a deviation from the usual course. *See* FSH 1909.15 § 31.2. Relying upon site-specific information, the district ranger considered such factors as the habitat of any endangered species, aquatic resources, soil conditions and erosion potential. We believe that this methodology complies with the mandate of the Rescissions Act.

We think that the initial decision of the Forest Service to create a categorical exclusion for sites of this size,[6] coupled with the site-specific analysis of the district ranger as to whether any exceptional circumstances required that the categorical exclusion not be implemented, constitutes adequate compliance with the terms of § 2001 of the Rescissions Act.

**5.** Section 31.2 of the Forest Service Handbook 1909.15 provides a list of categories of "[r]outine proposed actions" for which an EA may be excluded. Paragraph 4 in that list excludes salvage harvests removing one million board feet or less of merchantable wood products. This handbook

section also requires a determination that "no extraordinary circumstances exist."

**6.** The conformity of this categorical exclusion with the environmental statutes has not been challenged in this litigation.

C.

Mr. Mahler's other contentions need not detain us long. Before this court, he contends that he was unfairly disadvantaged in the proceedings before the district court because the court decided, sua sponte, to base its grant of the Forest Service's summary judgment motion on the view that the agency in fact had conducted an environmental study and not on the propriety of the agency's reliance on a categorical exclusion. Because we have addressed squarely the issue that Mr. Mahler believes ought to have been the sole focus of the district court, we do not believe that it can be said fairly that there is any disadvantage at this point. Therefore, we need not decide definitively whether the district court erred in this regard.

Nor can we accept Mr. Mahler's suggestion that, by not providing an EA, the Forest Service eliminated public participation through notice and comment. As we made clear in our decision in case numbers 97–1117 and 97–1253, *Mahler v. United States Forest Service*, 128 F.3d 573 (7th Cir.1997), compliance with § 2001 of the Rescissions Act also amounts, as a matter of law, to compliance with the notice and comment provisions of the otherwise applicable federal statutes.

Conclusion

We believe that the District Forest Ranger complied adequately with the Rescissions Act in determining that it was appropriate to proceed with the emergency timber sale at issue here. We also believe that Mr. Mahler's right to express his views on this matter was protected adequately by the actions of the Forest Service. Nor do we perceive any unfairness to Mr. Mahler during the judicial review of the Forest Service's actions.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.