**WOODCREST MANUFACTURING, INC., Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**No. 3:98CV0456 AS.**

United States District Court, N.D. Indiana, South Bend Division.

Dec. 14, 1999.

**776**

Richard S VanRheenen, VanRheenen & Associates PC, Indianapolis, IN, for plaintiff.

Daniel R Dertke, U.S. Dept. of Justice, Environmental Defense Section, Washington, DC, for defendant.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This cause is before the Court on the Petitioner's Notice of Appeal and Petition for Judicial Review filed August 24, 1998. Jurisdiction is appropriate under 42 U.S.C. § 11045(f)(1). After considering all relevant materials submitted by the parties, the Court now rules as follows.

### FACTUAL AND LEGAL SETTING

In 1986, Congress passed the Emergency Planning and Community Right–To–Know Act (EPCRA) largely as a response to the disaster in Bhopal India. *Citizens for a Better Environment v. Steel Co.*, 90 F.3d 1237, 1238 (7th Cir.1996), *vacated for lack of standing, Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The Act required reporting of the use of certain hazardous chemicals to the Environmental Protection Agency ("EPA") and to local officials and required local officials to have an emergency plan to deal with hazardous chemical releases. Companies subject to the chapter were to notify the State emergency response commission that they were subject to the requirements of the chapter no later than seven months after October 17, 1986. EPCRA § 301(c). The reporting requirement went into effect for the calendar year of 1987, with the first report due by July 1, 1988. EPCRA § 313. The statute is specific about the information companies must report and the form it is to take so that communities can formulate emergency response plans.

Many small businesses were unaware of the existence of the new reporting requirement, sometimes with costly results.[1] On May 4, 1992, an EPA inspector contacted the Petitioner, Woodcrest Manufacturing, Inc. ("Woodcrest"), a small children's toy manufacturer in Peru,, Indiana, about its compliance with the statute. The inspector came out and determined that Woodcrest used several chemicals in quantities above the reporting thresholds and was therefore obligated to file the annual reports. Woodcrest alleges that it did not file the reports because it was unaware of the reporting requirement and made a good faith effort to come into compliance as soon as possible. Pet'r's Brief at 2.

On June 23, 1992, Woodcrest sent all of the requested documents to the EPA for the three years it had failed to report, a stack of paper which the Government says in its brief was approximately three inches thick. Resp.'s Brief at 4. It then filed a timely report for 1991 by the July 1, 1992 deadline. With the documents, Woodcrest sent a letter stating that it hoped the information fulfilled its reporting requirements and put it in compliance and asked the inspector to let Woodcrest know if it could be of further service. Pet'r's Brief at 3. Woodcrest has filed timely reports each year from 1992 to the present.

---

1. *See* Jeffrey T. Pender, High Penalties and Citizen Suits Await Small Businesses Unaware of Reporting Requirements, 10 Corp. Couns.Rev. 81 (May 1991).

Woodcrest heard nothing further from the EPA until if filed an administrative complaint January 24, 1996 asking for a civil penalty of $27,000, due to Woodcrest's failure to file the 1990 Form R reports.

Woodcrest contested the amount of the civil penalty and attempted to work with the EPA on its own, without hiring an attorney. Pet'r's Brief at 4. Although the EPA filed its complaint in January, 1996, a hearing was not scheduled until May 28, 1997. *Id.* On May 8, 1999, the EPA requested and accelerated judgment, the administrative equivalent of a motion for summary judgment. *Id.* In an unrecorded telephone conference on May 22, 1997 between Woodcrest, the Administrative Law Judge (the "ALJ") and EPA representatives, Woodcrest understood that the ALJ was denying the EPA's request for accelerated judgment and that the hearing would go ahead as scheduled on May 28, 1997. *Id.* at 6.

Woodcrest finally hired an attorney to handle the matter, who immediately asked for a continuance. *Id.* At first, the EPA attorney agreed to a sixty day continuance, but the next day, after Woodcrest's counsel left town for the long holiday weekend, changed her mind and opposed the continuance. *Id.* at 7. On May 27, the ALJ contacted Woodcrest's attorney that and informed him "in a rude and one-sided manner that he had told Woodcrest to settle and Woodcrest had not, and that the failure to settle was Woodcrest's fault." *Id.* As a result, he was canceling the hearing and if the case was not settled by June 10, 1997, he was ruling on the EPA's request for accelerated judgment. *Id.* Woodcrest was not given the option to have the hearing on May 28, 1997, as scheduled. Woodcrest claims that the ALJ's statements indicate that he was biased against Woodcrest because it refused to settle, and that his behavior was arbitrary and capricious. *Id.*

Woodcrest did not settle, and as promised, the ALJ ruled in favor of the EPA on June 13, 1997, finding that Woodcrest had admitted it was liable, and that a $27,000 penalty was appropriate. Woodcrest appealed to the Environmental Appeals Board (the "Board"), which affirmed the ALJ's ruling, but reduced the penalty to $24,840 based on Woodcrest's acknowledged cooperation during the 1992 inspection. Woodcrest then initiated this action alleging a number of procedural deficiencies in the EPA's handling of the matter. A hearing and oral arguments were had regarding this case in Lafayette, Indiana, on December 8, 1999.

## RELEVANT LAW

### Sec. 11022. Emergency and hazardous chemical inventory forms

(a) Basic requirement.

(1) The owner or operator of any facility which is required to prepare or have available a material safety data sheet for a hazardous chemical under the Occupational Safety and Health Act of 1970 and regulations promulgated under that Act shall prepare and submit an emergency and hazardous chemical inventory form (hereafter in this title referred to as an "inventory form") to each of the following:

(A) The appropriate local emergency planning committee.

(B) The State emergency response commission.

(C) The fire department with jurisdiction over the facility.

(2) The inventory form ... shall be submitted on or before March 1, 1988, and annually thereafter on March 1, and shall contain data with respect to the preceding calendar year.

42 U.S.C. § 11022(a).

### Sec. 11023. Toxic chemical release forms

(a) Basic requirement.

The owner or operator of a facility subject to the requirements of this section shall complete a toxic chemical release form as published under subsection (g) of this section for each toxic

chemical listed under subsection (c) of this section that was manufactured, processed, or otherwise used in quantities exceeding the toxic chemical threshold quantity established by subsection (f) of this section during the preceding calendar year at such facility. Such form shall be submitted to the [EPA] Administrator and to an official or officials of the State designated by the Governor on or before July 1, 1988, and annually thereafter on July 1 and shall contain data reflecting releases during the preceding calendar year.

42 U.S.C. § 11023(a).

### Sec. 11045. Enforcement

(c) Civil and administrative penalties for reporting requirements

(1) Any person (other than a governmental entity) who violates any requirement of section 11022 or 11023 of this title shall be liable to the United States for a civil penalty in an amount not to exceed $25,000 for each such violation.

\*      \*      \*      \*      \*      \*

(3) Each day a violation described in paragraph (1) or (2) continues shall, for purposes of this subsection, constitute a separate violation.

(4) The Administrator may assess any civil penalty for which a person is liable under this subsection by administrative order or may bring an action to assess and collect the penalty in the United States district court for the district in which the person from whom the penalty is sought resides or in which such person's principal place of business is located.

\*      \*      \*      \*      \*      \*

**(f) Procedures for administrative penalties**

(1) Any person against whom a civil penalty is assessed under this section may obtain review thereof in the appropriate district court of the United States

by filing notice of appeal in such court within 30 days ...

42 U.S.C. § 11045(f)(1).

### STANDARD OF REVIEW

■ In EPCRA, Congress made clear its intent to allow judicial review for any party against whom the EPA assessed a civil penalty for violation of the reporting requirements. 42 U.S.C. § 11045(f)(1). Because Congress did not specify a standard of review in the statute, the EPA's decision is reviewed under the standard set out in the Administrative Procedure Act. 5 U.S.C. § 706. Under this provision, agency action should be sustained unless it is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A decision is "arbitrary and capricious" if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Mahler v. United States Forest Service*, 128 F.3d 578, 582 (7th Cir. 1997) (quoting *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

■ The reviewing court is to conduct a thorough, probing, in depth review, but the ultimate standard is a narrow one. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–16, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The court is not empowered to substitute its judgment for that of the agency. *Id.* Agency action passes muster under this standard if the agency examines all the relevant data and articulates a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made." *Id.* (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)).

## DISCUSSION

Congress set out severe penalties in EPCRA for a company required to report under the reporting provisions that fails to do so, as much as $25,000 for each violation. 42 U.S.C. § 11045(c)(1). The statute goes on to say that each day the company fails to file the required reports is an additional violation. 42 U.S.C. § 11045(c)(3). Obviously, an unsuspecting company can accumulate enormous fines in a relatively short period of time. Woodcrest does not seem to understand that in 1992, when it discovered that it was required to report under EPCRA, it was already subject to civil penalties for each day that it had failed to file the required forms. Even if it filed the Form R's for 1988, 1989, and 1990 in 1992, when it became aware of the violation, the late filings would not have cut off its liability for the fines. Its good faith efforts to comply with the statute would only have been a factor allowing the EPA to reduce its fines. 42 U.S.C. § 11045(b)(1)(C). The fact that the EPA inspector may have lead them to believe that they were in compliance with the statute and that there would be no consequences for their failure to report on time does not get them over the initial hurdle that their reports were not filed on time. They are caught by the maxim that ignorance of the law is no excuse.

Why the EPA chose to do nothing about the violations until 1996, and then to ask for a civil penalty of $27,000 from a company that had acted in good faith and made every effort to comply with the law for four years, is baffling. The fact remains, however, that Woodcrest violated the reporting statute and could have been fined a much higher amount, especially if the EPA had filed its assessment two years earlier, before it was time barred for the 1988 and 1989 violations.

Even if this court accepts all of Woodcrest's allegations as true, and finds 1) that the EPA acted unreasonably in fining them after four years of good faith compliance; 2) that the EPA's procedures were inadequate; 3) that Woodcrest was entitled to a hearing; 4) that the Administrative Law Judge (the "ALJ") appeared to be biased against Woodcrest because Woodcrest would not settle; and 5) that the ALJ acted in an arbitrary and capricious manner in canceling the hearing and ruling on the EPA's motion, it would still not solve the Petitioner's problem that it did in fact violate the reporting statute for several years and is therefore subject to a civil penalty. If this Court remands the Petitioner's cause for a full and fair hearing, there is no evidence that Woodcrest can produce that will alter the fact that they violated the EPCRA reporting requirement for almost three years. In spite of their good faith efforts to correct the violation, they are still subject to the civil penalties of the statute. There is no doubt here as to the basic good faith of this petitioner.[2]

Most of the litigation over the EPCRA reporting requirements has been over the use of the citizen suit provision to force compliance and the requirements for standing.[3] However, standing limitations placed on citizen's groups do not apply to the EPA. While this Court might question the soundness of the EPA's decision to go after a company like Woodcrest after so many years of compliance, especially since this suit is likely to cost the EPA much more than they will collect in fines, it is still sadly within the discretion of the EPA to do so. In fact, this case has all the earmarks of federal bureaucratic overreaching.

2. As represented to this Court by this Petitioner, the conduct of the ALJ in this case leaves much to be desired. One must hope abuse of this quasi judicial position is not commonplace in this powerful federal agency. All concerned and the public have a right to expect better.

3. For a discussion of citizen suit standing, see *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

There is no basis on which this Court can grant the relief requested by this Petitioner, and such is now DENIED. Judgment shall enter accordingly and each party will bear its own costs.

**IT IS SO ORDERED.**